UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 10-24469-CIV-MARRA

GREAT LAKES REINSURANCE (UK) PLC,
as subrogee of David Trafton,

       Plaintiff,

v.

SUNSET HARBOUR MARINA, INC., and
SUNSET HARBOUR YACHT CLUB, INC.,

       Defendants.

_____/

## OPINION AND ORDER

This cause is before the Court upon Defendants', Sunset Harbour Marina, Inc., and Sunset Harbour Yacht Club, Inc., Motion for Summary Judgment with Supporting Memorandum of Law or, Alternatively, Renewed Motion to Compel Arbitration for Counts III, IV, and V of Plaintiff's Second Amended Complaint (DE 68). Plaintiff filed its response (DE 71). Defendants replied (DE 72). The Court has carefully considered the briefs of the parties and is otherwise fully advised in the premises.

## I. Background

On November 1, 2009, David Trafton took his family to the Sunset Harbour Marina & Yacht Club, where his boat should have been docked, for an afternoon on the water. The vessel was gone. Trafton reported the boat stolen, and the ensuing investigation culminated in an award from his insurance company that covered his loss. Trafton's insurance company, Plaintiff Great Lakes Reinsurance [hereinafter "Plaintiff" or "Great Lakes"], brings this claim as Trafton's subrogee for

negligence, gross negligence, and bailment against Sunset Harbour Yacht Club, Inc. [hereinafter "the Yacht Club"]. Defendants move to compel arbitration on the three counts against the Yacht Club or, alternatively, for summary judgment. The Court begins with a summary of the undisputed facts.

In 2002, David Trafton's father, Wilbur Trafton, bought a new boat named the *Launch'M*. (DE 68, Attach. 1: Nautilus Investigations Report [hereinafter "Investigations Report"] at 1). In September 2003, Wilbur moved the *Launch'M* from its original dockage spot to the Sunset Harbour Marina [hereinafter "the Marina"], where his son David signed a dockage agreement. The dockage agreement gave the Traftons temporary access to a slip for the vessel until they could establish a membership with the Yacht Club and acquire a permanent slip. (DE 68, Attach. 6: Sunset Harbour Marina Dockage Agreement; DE 68, Attach. 2: David Trafton Dep. [hereinafter "Trafton Dep."] at 46–51).

> The Yacht Club's Membership Plan provides, in pertinent part, that
>
> [f]or the convenience of members, a membership may be held in the name of a corporation, partnership, trust or other form of multiple ownership (collectively, the "entity"). The entity must designate one individual or family who will have the right to use the membership. . . . The designated user must be a bona fide director, officer, partner, shareholder or employee of the entity . . . and must pay the required dues and charges. No person other than the designated user and his or her immediate family will be entitled to simultaneously use the membership.

(DE 71, Attach. 6: Yacht Club Membership Plan at 4). Consistent with the Yacht Club's Membership Plan, Wilbur Trafton—along with his wife Mary Trafton, his son David, and David's wife Rochelle Trafton—formed a limited liability company called WCT & Associates, LLC [hereinafter "the company"], to purchase an equity membership in the Yacht Club. (Trafton Dep. at

22–23, 25–26, 31–34).[1] Buying the membership through the company would give the company's members access to the Yacht Club's amenities, e.g., the pool, gym, and dock.

All four individuals—Wilbur Trafton, Mary Trafton, David Trafton, and Rochelle Trafton—were members of the company. (Trafton Dep. at 20). On October 1, 2003, the company purchased its equity membership, with Wilbur Trafton signing the purchase agreement on the company's behalf as president. (Trafton Dep. at 46–47; DE 71, Attach. 7: Sunset Harbour Yacht Club, Inc. Membership Purchase Statement). All four individual members of the company, including David Trafton, were listed on the agreement. Wilbur and his wife Mary Trafton signed the agreement; David and Rochelle did not.  As part of its equity membership in the Yacht Club, the company was designated a slip for use by the company's members. (Trafton Dep. at 24-25).

As a member of the company, David Trafton testified that he considered himself authorized

---

[1] During David Trafton's deposition, he had the following exchange with Defendants' counsel:

**Q.** So what was the purpose in forming [the company]?
**A.** The purpose was for the company to be the owner, if you will, of the equity club membership.
**Q.** And what benefits would [the company] receive as part of being a member of the Sunset Harbour Yacht Club? What was it entitled to do, use?
**A.** [The company] was afforded all the rights and privileges outlined in the marina documents.
**Q.** So it was entitled to—well, when I say it, it's obviously [sic] a company doesn't do something generally. It's those who participate in the company do things, to use the pool. Did any of the members ever use the pool at the yacht club?
**A.** Yes.
**Q.** Did you, yourself, use the pool?
**A.** Yes, I did.
**Q.** Did [sic], yourself, use the gym?
**A.** Yes, I did.
**Q.** Do you know if your nuclear family as in your children and your wife—I know your wife is a member. Did they use the pool?
**A.** I didn't have any children at the time, yes.
**Q.** Yes what?
**A.** Yes, my wife and children used the pool.

(Trafton Dep. at 22–23).

to enjoy all the benefits of membership with the Yacht Club—including using the pool, the weight room, and the slip to dock the *Launch'M*—and that he "was the person who most frequented the yacht club" making him the most frequent occupant of the company's assigned parking space. (Trafton Dep. at 34, 38, 44–45). Moreover, because the Yacht Club was a private facility, David stated that he was always provided with a means of entry, whether it was a traditional key or an electronic key fob as the Yacht Club's technology progressed. (Trafton Dep. at 40–44).

David's father maintained the *Launch'M* at the Marina from the time the company purchased the membership until 2006, when he sold the vessel to David. (Trafton Dep. at 10; Investigations Report at 1–2). David then continued to dock the vessel at the Marina. He also signed a voting proxy ballot on the company's behalf on both January 25, 2008, and May 16, 2008. (DE 68, Attach. 4: Proxy Ballot).[2]

On October 28, 2009, the *Launch'M* was taken from its slip. (Investigations Report at 3). David found his boat missing on November 1, 2009, and reported it stolen. (Trafton Dep. at 15; Investigations Report at 3). The vessel was never recovered. David subsequently filed an insurance claim with Plaintiff Great Lakes Reinsurance, which Plaintiff honored by paying him for the loss. (Trafton Dep. at 54–55).

Plaintiff, as David's subrogee, brings this suit against the Defendant Yacht Club for negligence, gross negligence, and bailment.[3] Defendants move to compel arbitration for all counts

[2] On the latter date, he signed his name on the line designated "Equity Member sign here" and printed his name above the name of the company on the line designated "Print Name."

[3] Plaintiff initially brought counts against the Marina as an entity separate from the Yacht Club, but those claims have since been resolved. The sole remaining counts are Counts III, IV, and V of the Second Amended Complaint against the Yacht Club.

4

on the ground that a mandatory arbitration provision in the Yacht Club's bylaws binds Plaintiff as David Trafton's subrogee.[4] Alternatively, Defendants move for summary judgment on all counts. Because the Court finds in favor of Defendants on the issue of compelling arbitration, the Court need not reach the merits of Defendants' summary judgment motion.

## II.  Compelled Arbitration

### A. Legal Standard

The Supreme Court has articulated a strong federal policy favoring arbitration agreements. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). One of the purposes of the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1 *et seq.*, is to "ensure judicial enforcement of privately made agreements to arbitrate." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 219 (1985). As such, arbitration agreements must be "rigorously enforce[d]" by the courts. *Id.* at 221.

The FAA guides the courts in enforcing arbitration agreements: "A written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Further, the FAA allows a party "aggrieved by the alleged failure, neglect, or refusal of another to arbitrate" under an otherwise valid arbitration clause to seek an order from a court compelling arbitration. 9 U.S.C. § 4.

---

[4] Defendants have moved to compel arbitration twice before. (DE 19; DE 31). Both attempts resulted in dismissals without prejudice to allow Defendants the opportunity to establish that David Trafton was individually bound by the Yacht Club's bylaws or that he falls within one of the exceptions allowing signatories to an arbitration agreement to bind non-signatories. (DE 29 at 6–9; DE 45 at 9–12).

**B. Discussion**

The parties do not dispute that the company was a member of the Yacht Club and that members of the Yacht Club are bound by the following membership documents:

1.  The Yacht Club's Articles of Incorporation;

2.  The Yacht Club's Bylaws;

3.  The Yacht Club's Membership Plan;

4.  The member's Membership Purchase Statement;

5.  The member's Membership Certificate; and

6.  The Yacht Club's Rules and Regulations.

Article XXI of the Yacht Club's Bylaws, entitled "**ARBITRATION OF DISPUTES,**" provides, in pertinent part, that

> [e]ach and every dispute, claim or other matter of disagreement between the Club, its officers, directors, or affiliates on one hand and any member or applicant for membership on other hand [sic] relating to or arising out of the Membership Documents or any transaction contemplated by the Membership Documents shall only be decided by mediation, and if necessary, arbitration in accordance with the American Arbitration Association and no right shall exist to have any such dispute litigated in a court or by jury trial; provided, however, that the Club shall have the right to collect, through a court proceeding, any Club account or other amount owing as a result of the members' loss or destruction of the Club's property or injury caused to any party.

(DE 71, Attach. 4: Sunset Harbour Yacht Club Inc.'s Bylaws at 18–20). Thus, the parties' only disagreement is whether David Trafton, as an individual, was a member of the Yacht Club. If he was, then Plaintiff is bound by the arbitration agreement as his subrogee. *See State Farm Fla. Ins. Co. v. Loo*, 27 So. 3d 747, 748 (Fla. Dist. Ct. App. 2010) ("Generally, when an insurer pays the claim of its insured, the insurer stands in the shoes of its insured . . . .") (citing *Fireman's Fund Ins. Co. v.*

*Rojas*, 409 So. 2d 1166, 1167 (Fla. Dist. Ct. App. 1982)). If David was not a member, then Plaintiff is not bound by the arbitration provision.

In support of Defendants' position that David was bound by the bylaws' arbitration agreement, Defendants maintain that even as a nonsignatory to the arbitration agreement he was an intended third-party beneficiary of the company's membership. Alternatively, they argue that Plaintiff should be bound by the agreement under an estoppel theory. Plaintiff responds by suggesting that Trafton was never an intended beneficiary of the membership and that his Father, Wilbur Trafton, was the "designated user" and therefore the intended beneficiary. Moreover, Plaintiff concludes, this is not an appropriate situation to apply equitable estoppel because David Trafton was neither a member of the Yacht Club nor was he entitled to benefits of membership. For the reasons that follow, the Court concludes that David Trafton was an intended beneficiary of the company's membership with the Yacht Club.

"[T]raditional principles of state law may allow a contract to be enforced by or against nonparties to the contract through assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, wavier and estoppel." *Lawson v. Life of the S. Ins. Co.*, 648 F.3d 1166, 1170 (11th Cir. 2011) (quoting *Arthur Anderson LLP v. Carlisle*, 556 U.S. 624, 631 (2009)) (internal quotations omitted). Thus, the Court turns to state law to provide the rule of decision for the question of whether a party to a contract can enforce an arbitration clause against a nonparty. *See id.* at 1170–71. Florida law applies in this case.[5]

---

[5] The Court notes that the Eleventh Circuit's decision in *Lawson* held that state law provides the rule of decision for "the question of whether a non-party can enforce an arbitration clause against a party," *id.*, not the inverse question before this Court of whether a party can enforce an arbitration clause against a non-party. Nevertheless, the Court concludes that state law provides the rule of decision in both scenarios because *Lawson* relied on the Supreme Court's

In Florida, a nonsignatory to an arbitration agreement may nevertheless be compelled to arbitrate under the agreement when

> the non-party is specifically the intended third party beneficiary of the contract. A non-party is the specifically intended beneficiary only if the contract clearly express[es] an intent to primarily and directly benefit the third party or a class of persons to which that party belongs. To find the requisite intent, it must be established that the parties to the contract actually and expressly intended to benefit the third party; it is not sufficient to show only that one of the contracting parties unilaterally intended some benefit to the third party.

*Morgan Stanley DW Inc. v. Halliday*, 873 So. 2d 400, 403 (Fla. Dist. Ct. App. 2004). Defendants contend that they can compel Plaintiff to arbitrate under the Yacht Club's bylaws under a third-party beneficiary theory because—as David Trafton testified—the company was formed to benefit its members; Trafton, as a member of the company, took advantage of the company's membership through his use of the Yacht Club's amenities; Trafton was at all times provided with membership keys or cards so that he could access the Yacht Club's facilities and amenities whenever he pleased; and Trafton twice signed voting proxy ballots on the company's behalf.

In response, Plaintiff argues that while Trafton used the Yacht Club's amenities, he was not an intended third-party beneficiary of the membership agreement between the Yacht Club and the company because the third-party beneficiary of the membership was the "designated user," which was David's father Wilbur Trafton, not David. In other words, Plaintiff suggests that David's father is the only individual member of the company that could be bound by the arbitration agreement

---

decision in *Carlisle*, which stated, "[w]e have said many times that federal law requires that questions of arbitrability be addressed with a healthy regard for the federal policy favoring arbitration. Whatever the meaning of this vague prescription, it cannot possibly require the disregard of state law permitting arbitration by *or against* nonparties to the written arbitration agreement." *Carlisle*, 556 U.S. at 630 n.5 (emphasis in original removed) (remaining emphasis added) (internal citation and quotation omitted).

because he was the only individual member of the company that was entitled to benefit from the company's membership with the Yacht Club.[6] The facts do not support Plaintiff's position.

If David's father was the company's "designated user," David would not have been eligible to benefit from the company's membership. But David did benefit from the membership because, as he testified, he used the company's designated slip to dock his boat, he used the company's designated parking spot whenever he chose, he used the Yacht Club's gym, and he used the Yacht Club's pool. Moreover, he used these amenities whenever he chose because he was always given a membership key or card to access the facility. Through his membership in the company, David enjoyed the benefits of membership with the Yacht Club as much as any individual could. And his enjoyment of these benefits is consistent with both the company's and Defendants' intent in entering a membership agreement because the agreement was formed to benefit the company, and the company was formed to benefit its members. That David Trafton was arguably one step removed from the arbitration agreement because he was an individual member of the company does not warrant permitting him to enjoy all the benefits of the company's membership without binding him to the arbitration agreement.

David Trafton was specifically an intended third-party beneficiary of the company's membership agreement with the Yacht Club—and by extension, the arbitration agreement—because

---

[6] In support of the proposition that David Trafton was not eligible for membership privileges, Plaintiff points to the Yacht Club's Rules and Regulations, which state that "[t]he [Yacht] Club will issue an identification membership card to the member and the other members of his or her family who are eligible for membership privileges. . . . Membership cards will not be issued to children under the age of ten or over the age of 22." (DE 71, Attach. 5: Yacht Club's Rules and Regulations at 3). Because David is over the age of 22 (and was at all times relevant to this case), Plaintiff posits that he was ineligible for membership privileges as Wilbur Trafton's child. What Plaintiff fails to explain, however, is how David could be ineligible for membership yet enjoy all of its benefits.

9

the membership agreement "clearly expressed an intent to primarily and directly benefit" the company and its members. Both the company and Defendants actually and expressly intended to benefit the company *and its members* because a corporate entity cannot enjoy the fruits of a yacht club membership, only individuals can. To the extent that Plaintiff suggests Wilbur Trafton was the only individual entitled to enjoy the benefits of membership, the facts prove otherwise.

Moreover, as set forth above, the Yacht Club's Membership Plan provides that when a membership is held in the name of a corporate entity, "[t]he entity must designate one individual *or family* who will have the right to use the membership." (Yacht Club Membership Plan at 4) (emphasis added). Plaintiff asserts that Wilbur Trafton, David's father, was the designated user of the company's membership, but Plaintiff gives the Court nothing in support of this assertion beyond its conclusory statement, and nothing in the record supports Plaintiff's position. Conversely, while Defendants have not argued that the company designated the Trafton *family* as the company's designated user, that designation is consistent with the facts of this case and the Yacht Club's Membership Plan.  Accordingly, Defendants' Renewed Motion to Compel Arbitration for Counts III, IV, and V of Plaintiff's Second Amended Complaint (DE 68) is granted.

### III. Conclusion

It is hereby **ORDERED AND ADJUDGED** as follows:

1)      Defendants', Sunset Harbour Marina, Inc., and Sunset Harbour Yacht Club, Inc., Motion for Summary Judgment with Supporting Memorandum of Law or, Alternatively, Renewed Motion to Compel Arbitration for Counts III, IV, and V of Plaintiff's Second Amended Complaint (DE 68) is **GRANTED.**

2)      The Court **COMPELS ARBITRATION** for Counts III, IV, and V of Plaintiff's

Second Amended Complaint in accordance with the arbitration provision in Article

XXI of the Yacht Club's Bylaws (DE 71, Attach. 4: Sunset Harbour Yacht Club

Inc.'s Bylaws at 18–20).

3)      This case is mandatorily **STAYED** under Section 3 of the FAA.  The Clerk shall

**CLOSE** this case.  Any party may move to reopen the case after the arbitration is

completed if further judicial relief is required.

   **DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida,

this 12th day of December 2012.

_____
KENNETH A. MARRA
United States District Judge